**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

_____ District of Delaware _____
(State)

Case number (*If known*): _____ Chapter 11

☐ Check if this is an amended filing

## Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy   06/22

**If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known).  For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals*, is available.**

1. **Debtor's name**

   Impact Products, LLC

2. **All other names debtor used in the last 8 years**

   Include any assumed names, trade names, and *doing business as* names

3. **Debtor's federal Employer Identification Number (EIN)**

   3 4 – 1 9 6 7 4 5 0

4. **Debtor's address**

   **Principal place of business**

   385     Long Hill Road
   Number    Street

   Guilford     CT    06437
   City     State    ZIP Code

   New Haven
   County

   **Mailing address, if different from principal place of business**

   Number    Street

   P.O. Box

   City     State    ZIP Code

   **Location of principal assets, if different from principal place of business**

   Number    Street

   City     State    ZIP Code

5. **Debtor's website (URL)**   https://www.supplysourceglobal.com/

Debtor  Impact Products, LLC_____     Case number *(if known)*_____
Name

| 6. | **Type of debtor** | |
|---|---|---|

☑ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))

☐ Partnership (excluding  LLP)

☐ Other. Specify: _____

| 7. | **Describe debtor's business** |
|---|---|

A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

☑ None of the above

B. *Check all that apply:*

☐ Tax-exempt entity (as described in 26 U.S.C. § 501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)

☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

C.  NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See
http://www.uscourts.gov/four-digit-national-association-naics-codes .

_4_ _2_ _4_ _9_

| 8. | **Under which chapter of the Bankruptcy Code is the debtor filing?** |
|---|---|

A debtor who is a "small business debtor" must check the first sub-box. A debtor as defined in § 1182(1) who elects to proceed under subchapter V of chapter 11 (whether or not the debtor is a "small business debtor") must check the second sub-box.

*Check one:*

☐ Chapter 7

☐ Chapter 9

☑ Chapter 11. *Check all that apply:*

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,024,725. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ The debtor is a debtor as defined in 11 U.S.C. § 1182(1), its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $7,500,000, **and it chooses to proceed under Subchapter V of Chapter 11.** If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return, or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ A plan is being filed with this petition.

☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

Debtor    Impact Products, LLC
_____      Case number (if known)_____
Name

---

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

☑ No

☐ Yes.   District _____   When _____   Case number _____
                                               MM / DD / YYYY

           District _____   When _____   Case number _____
                                                 MM / DD / YYYY

---

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

List all cases. If more than 1, attach a separate list.

☐ No

☑ Yes.   Debtor   See Rider _____   Relationship _____

          District   Delaware _____   When _____
                                                           MM / DD / YYYY

          Case number, if known _____

---

**11. Why is the case filed in *this district*?**

*Check all that apply:*

☑ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☑ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

---

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☑ No

☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

     **Why does the property need immediate attention?** *(Check all that apply.)*

     ☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

        What is the hazard? _____

     ☐ It needs to be physically secured or protected from the weather.

     ☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

     ☐ Other _____

     **Where is the property?** _____
                                        Number       Street

                                        _____

                                        City                                    State ZIP Code

     **Is the property insured?**

     ☐ No

     ☐ Yes. Insurance agency _____

                Contact name _____

                Phone _____

---

**Statistical and administrative information**

---

Debtor    Impact Products, LLC _____    Case number *(if known)* _____
     Name

| | | | |
|---|---|---|---|
| **13. Debtor's estimation of available funds** | *Check one:*<br>☑ Funds will be available for distribution to unsecured creditors.<br>☐ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors. | | |

**14. Estimated number of creditors**

☐ 1-49      ☐ 1,000-5,000      ☐ 25,001-50,000
☐ 50-99      ☐ 5,001-10,000      ☐ 50,001-100,000
☐ 100-199      ☐ 10,001-25,000      ☐ More than 100,000
☑ 200-999

**15. Estimated assets**

☐ $0-$50,000      ☐ $1,000,001-$10 million      ☐ $500,000,001-$1 billion
☐ $50,001-$100,000      ☐ $10,000,001-$50 million      ☐ $1,000,000,001-$10 billion
☐ $100,001-$500,000      ☑ $50,000,001-$100 million      ☐ $10,000,000,001-$50 billion
☐ $500,001-$1 million      ☐ $100,000,001-$500 million      ☐ More than $50 billion

**16. Estimated liabilities**

☐ $0-$50,000      ☐ $1,000,001-$10 million      ☐ $500,000,001-$1 billion
☐ $50,001-$100,000      ☐ $10,000,001-$50 million      ☐ $1,000,000,001-$10 billion
☐ $100,001-$500,000      ☐ $50,000,001-$100 million      ☐ $10,000,000,001-$50 billion
☐ $500,001-$1 million      ☑ $100,000,001-$500 million      ☐ More than $50 billion

---

## Request for Relief, Declaration, and Signatures

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   05/21/2024 _____
       MM / DD / YYYY

✖ _____/s/ Laura Marcero___           Laura Marcero _____
Signature of authorized representative of debtor         Printed name

Title Vice President _____

Debtor      Impact Products, LLC_____      Case number (*if known*)_____
                     Name

**18. Signature of attorney**      ✗ _____/s/ M. Blake Cleary_____      Date    05/21/2024_____
                                                    Signature of attorney for debtor                              MM   / DD / YYYY

                                          M. Blake Cleary_____
                                          Printed name

                                          Potter Anderson & Corroon LLP_____
                                          Firm name

                                          1313_____North Market Street, 6th Floor_____
                                          Number        Street

                                          Wilmington_____      DE_____ 19801_____
                                          City                                                                  State          ZIP Code

                                          (302) 984-6000_____      bcleary@potteranderson.com____
                                          Contact phone                                                    Email address

                                          3614_____      DE_____
                                          Bar number                                                      State

**<u>Rider</u>**

**<u>Pending Bankruptcy Cases Filed by the Debtor and Affiliates of the Debtor</u>**

On the date hereof, each of the entities below (collectively, the "<u>Debtors</u>") filed a petition in the United States Bankruptcy Court for the District of Delaware for relief under chapter 11 of title 11 of the United States Code. The Debtors have moved for joint administration of these cases under the case number assigned to the chapter 11 case of Supply Source Enterprises, Inc.

- SSE Intermediate, Inc.

- SSE Buyer, Inc.

- Supply Source Enterprises, Inc.

- Impact Products, LLC

- The Safety Zone, LLC

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Supply Source Enterprises, Inc.*, et al.,*[1] | Case No. 24- [____] (___) |
| Debtors. | (Joint Administration Requested) |

**COMBINED CORPORATE OWNERSHIP STATEMENT PURSUANT TO
FEDERAL RULES OF BANKRUPTCY PROCEDURE 1007 AND 7007.1**

Pursuant to rules 1007(a)(1) and 7007.1 of the Federal Rules of Bankruptcy Procedure, Supply Source Enterprises, Inc. and certain of its affiliates, who are or may be debtors and debtors in possession in the above-captioned cases (each a "Debtor" and collectively, the "Debtors"), hereby state as follows:

1.  A list of the Debtors' equity interest holders, their addresses, and the nature of their equity interests is below.[2]  No publicly traded corporation owns more than 10% of the Debtors' equity interests.

2.  Debtor Impact Products, LLC is 100% owned by Debtor Supply Source Enterprises, Inc., located at 385 Long Hill Road, Guilford, Connecticut 06437.

3.  Debtor The Safety Zone, LLC is 100% owned by Debtor Supply Source Enterprises, Inc., located at 385 Long Hill Road, Guilford, Connecticut 06437.

---

[1] The Debtors in these chapter 11 proceedings, together with the last four digits of each Debtor's federal tax identification number, are: Supply Source Enterprises, Inc. (0842); SSE Intermediate, Inc. (1772); SSE Buyer, Inc. (5901); Impact Products, LLC (7450); and The Safety Zone, LLC (4597).  The Debtors' headquarters are located at 385 Long Hill Road, Guilford, Connecticut 06437.

[2] The Debtors reserve the right to supplement or amend the list of the Debtors' equity interest holders within fourteen days of the date hereof, pursuant to rule 1007(a)(3) of the Federal Rules of Bankruptcy Procedure.

4.   Debtor Supply Source Enterprises, Inc. is 100% owned by Debtor SSE Buyer, Inc., located at 385 Long Hill Road, Guilford, Connecticut 06437.

5.   Debtor SSE Buyer, Inc. is 100% owned by Debtor SSE Intermediate, Inc., located at 385 Long Hill Road, Guilford, Connecticut 06437.

6.   Debtor SSE Intermediate, Inc. is 100% owned by SSE Acquisition Holding, Inc., located at 385 Long Hill Road, Guilford, Connecticut 06437.

## Omnibus Written Consent in Lieu of a Meeting of
## Supply Source Enterprises, Inc.,
## SSE Intermediate, Inc., SSE Buyer, Inc.,
## Impact Products, LLC, and The Safety Zone, LLC

### May 20, 2024

The undersigned, being (i) all of the members of the boards of directors or the boards of managers, or (ii) the sole or managing member, as applicable (in each case, a "Governing Body" and collectively, the "Governing Bodies"), of Supply Source Enterprises, Inc., SSE Intermediate, Inc., SSE Buyer, Inc., Impact Products, LLC, and The Safety Zone, LLC (each, a "Company" and together, the "Companies"), hereby consent, in accordance with the organizational documents of each Company and applicable state laws, to the following actions and adopt the following resolutions with respect to each Company in lieu of a meeting effective as of the date hereof.

### Chapter 11 Filing

WHEREAS, each Governing Body has considered presentations by the financial and legal advisors of each of the Companies regarding the liabilities and liquidity situation of each of the Companies, the strategic alternatives available to each of the Companies, and the effect of the foregoing on each Company's business;

WHEREAS, each Governing Body has had the opportunity to consult with the financial and legal advisors of the Companies and fully consider each of the strategic alternatives available to the Companies;

WHEREAS, each Governing Body has had the opportunity to consult with the financial and legal advisors of the Companies and review chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and the preparation materials provided by the financial and legal advisors, and each Governing Body recommends the adoption of these resolutions;

NOW, THEREFORE, BE IT RESOLVED, that in the business judgment of each Governing Body, it is desirable and in the best interests of each Company (including a consideration of its creditors and other parties in interest) that each Company shall be, and hereby is, authorized to file, or cause to be filed, a voluntary petition for relief (each a "Chapter 11 Case" and collectively, the "Chapter 11 Cases") under the provisions of chapter 11 of title 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") and any other petition for relief or recognition or other order that may be desirable under applicable law in the United States;

FURTHER RESOLVED, that any member, officer, or director of the Companies, or any other duly appointed officer or other person acting at the direction of the foregoing officers of each Company (collectively, the "Authorized Signatories"), acting alone or with one or more other Authorized Signatories be, and they hereby are, authorized, empowered, and directed to execute and file on behalf of each Company all petitions, schedules, lists, and other motions, papers, or documents,

and to take any and all actions that they deem necessary, proper, or convenient to obtain such relief, including, without limitation, any action necessary to maintain the ordinary course operation of each Company's business; and

FURTHER RESOLVED, that all acts and deeds previously performed by any of the Authorized Signatories or officers of any of the Companies prior to the adoption of the foregoing recitals and resolutions that are within the authority conferred by the foregoing recitals and resolutions, are hereby ratified, confirmed, and approved in all respects as the authorized acts and deeds of the Companies.

## Retention of Professionals

WHEREAS, each Governing Body has considered presentations by the financial and legal advisors of each Company regarding the retention of such financial and legal advisors by each Company.

NOW, THEREFORE, BE IT RESOLVED, that each of the Authorized Signatories be, and hereby is, authorized, empowered, and directed to employ the law firm of McDermott Will & Emery LLP ("McDermott") as bankruptcy co-counsel to represent and assist each Company in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance each Company's rights and obligations, including filing any motions, objections, replies, applications, or pleadings; and in connection therewith, each of the Authorized Signatories, with power of delegation, is hereby authorized, empowered, and directed to execute appropriate retention agreements, pay appropriate retainers and fees, and to cause to be filed an appropriate application for authority to retain the services of McDermott;

FURTHER RESOLVED, that each of the Authorized Signatories be, and hereby is, authorized, empowered, and directed to employ the law firm of Potter Anderson & Corroon LLP ("Potter Anderson") as bankruptcy co-counsel to represent and assist each Company in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance each Company's rights and obligations, including filing any motions, objections, replies, applications, or pleadings; and in connection therewith, each of the Authorized Signatories, with power of delegation, is hereby authorized, empowered, and directed to execute appropriate retention agreements, pay appropriate retainers and fees, and to cause to be filed an appropriate application for authority to retain the services of Potter Anderson;

FURTHER RESOLVED, that each of the Authorized Signatories be, and hereby is, authorized, empowered, and directed to employ the firm of Triple P RTS, LLC ("Portage Point Partners") to provide Thomas Studebaker, as Chief Restructuring Officer and to provide additional personnel to provide restructuring services and to represent and assist each Company in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance each of each Company's rights and obligations; and in connection therewith, each of the Authorized Signatories, with power of delegation, is hereby authorized, empowered, and directed to execute appropriate retention agreements, pay appropriate retainers and fees, and to cause to be filed an appropriate application for authority to retain the services of Portage Point Partners;

2

FURTHER RESOLVED, that each of the Authorized Signatories be, and hereby is, authorized, empowered, and directed to employ the firm of Kurtzman Carson Consultants LLC ("KCC") as notice and claims agent to represent and assist each Company in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance each Company's rights and obligations; and in connection therewith, each of the Authorized Signatories, with power of delegation, is hereby authorized, empowered, and directed to execute appropriate retention agreements, pay appropriate retainers and fees, and to cause to be filed appropriate applications for authority to retain the services of KCC;

FURTHER RESOLVED, that each of the Authorized Signatories be, and hereby is, authorized, empowered, and directed to employ any other professionals to assist each Company in carrying out its duties under the Bankruptcy Code; and in connection therewith, each of the Authorized Signatories, with power of delegation, is hereby authorized, empowered, and directed to execute appropriate retention agreements, pay appropriate retainers and fees, and to cause to be filed an appropriate application for authority to retain the services of any other professionals as necessary, proper, or convenient; and

FURTHER RESOLVED, that each of the Authorized Signatories be, and hereby is, with the power of delegation, authorized, empowered, and directed to execute and file all petitions, schedules, motions, lists, applications, pleadings, and other papers, and, in connection therewith, to employ and retain all assistance by legal counsel, accountants, financial advisors, and other professionals and to take and perform any and all further acts and deeds that each of the Authorized Signatories deem necessary, proper, or desirable in connection with each Company's Chapter 11 Case, with a view to the successful prosecution of such case.

## Debtor-in-Possession Financing, Cash Collateral, and Adequate Protection

WHEREAS, the Companies are party to that certain Credit Agreement, dated as of June 30, 2020 (as may be amended, restated, amended and restated, modified, or supplemented from time to time) (the "Term Loan Credit Facility"), with the guarantors and lenders party thereto and Ares Capital Corporation as the administrative agent (the "Term Loan Agent");

WHEREAS, the Companies are party to that certain Credit Agreement, dated as of June 30, 2022 (as may be amended, restated, amended and restated, modified, or supplemented from time to time) (the "ABL Credit Facility" and, together with the Term Loan Credit Facility, the "Prepetition Credit Agreements"), with the guarantors and lenders party thereto and ACF Finco I LP as the administrative agent (the "ABL Loan Agent" and, together with the Term Loan Agent, the "Prepetition Agents"); and

WHEREAS, reference is made to that certain Debtor In Possession Secured Multi-Draw Term Promissory Note (together with any and all exhibits, schedules, and annexes thereto, the "DIP Credit Agreement") providing for a secured term loan financing facility of up to $60 million in the

aggregate (together with all exhibits, schedules, and annexes thereto, as amended, amended and restated, supplemented, or otherwise modified from time to time, the "DIP Facility") dated as of, or about, the date hereof, that sets forth the terms and conditions of the debtor-in-possession credit financing to be provided to the Companies by the lenders listed therein and party thereto from time to time (the "DIP Lenders") and the administrative agent(s) thereto (the "DIP Agents").

NOW, THEREFORE, BE IT RESOLVED, that, in the judgment of the Governing Body of each Company, each such Company will receive benefits from the DIP Credit Agreement and the loans contemplated thereunder, and it is desirable and in the best interest of each such Company, each such Company's equity holders, creditors, and other parties in interest that the form, terms, and provisions of (i) that certain DIP Credit Agreement and (ii) the Collateral Documents (as defined in the DIP Credit Agreement) to which the Companies are a party, all other documents, agreements, instruments or certificates, intellectual property security agreements, joinders, and consents to be executed, delivered, or filed by each such Company in connection therewith, and the transactions contemplated by the DIP Credit Agreement and the other Collateral Documents (as defined in the DIP Credit Agreement) (in each case including, without limitation, the borrowings and other extensions of credit thereunder, and the guaranties, liabilities, obligations, security interest granted, and notes issued, if any, in connection therewith) be, and hereby are, authorized, adopted, and approved in substantially the form presented to the Governing Body of each Company, together with such changes as may be approved by the Authorized Signatories executing and delivering the same, such approval to be conclusively evidenced by such Authorized Signatory's execution and delivery thereof;

FURTHER RESOLVED, that the Governing Body of each Company has determined that it is necessary and in the best interest of each such Company's business and affairs, each such Company's equity holders, creditors, and all other parties in interest that the form, terms, and provisions of (i) that certain DIP Credit Agreement, in substantially the form presented to the Governing Body of each Company to execute, deliver, and perform the DIP Credit Agreement and (ii) the other Collateral Documents (as defined in the DIP Credit Agreement) to which it is a party, to perform such Company's obligations thereunder and to consummate the transactions contemplated thereby, including, without limitation, any borrowings, the performance of any guarantees and the granting of any security interests and liens, and each such Company's execution and delivery of, and the incurrence and performance of its obligations in connection with, the DIP Credit Agreement, including, without limitation, the guarantee of the Obligations (as defined in the DIP Credit Agreement) thereunder, and any other DIP Document (as defined in the DIP Credit Agreement) to which it is a party, and the consummation of the transactions contemplated thereby or entered into in connection with the Collateral Documents (as defined in the DIP Credit Agreement), including, without limitation, any borrowing by any Company under the Collateral Documents (as defined in the DIP Credit Agreement), are hereby, in all respects, authorized and approved;

FURTHER RESOLVED, that each Company will obtain benefits from (a) the use of collateral, including cash collateral, as that term is defined in section 363(a) of the Bankruptcy Code (the "Cash Collateral"), which is security for certain prepetition secured lenders (collectively, the "Prepetition Secured Lenders") under the Prepetition Credit Agreements, and (b) the incurrence

4

of debtor-in-possession financing obligations pursuant to the DIP Facility (collectively, the "DIP Financing");

FURTHER RESOLVED, that to use and obtain the benefits of (a) the DIP Financing and (b) the Cash Collateral, and in accordance with section 363 of the Bankruptcy Code, the Companies will provide certain liens, claims, and adequate protection to the Prepetition Secured Lenders and to the DIP Lenders to secure the obligations of such Company under the DIP Facility (the "DIP Obligations") as documented in a proposed order in interim and final form (the "DIP Orders"), authorizing and approving the DIP Credit Agreement, the other Collateral Documents (as defined in the DIP Credit Agreement), and the transactions thereby, and submitted for approval to the Bankruptcy Court;

FURTHER RESOLVED, that the form, terms, and provisions of the DIP Orders to which each Company is or will be subject, and the actions and transactions contemplated thereby, are hereby authorized, adopted, and approved, and each of the Authorized Signatories of each such Company be, and hereby is, authorized and empowered, in the name of and on behalf of each such Company, to negotiate, or cause to be prepared and negotiated, and to take such actions necessary to execute, deliver, perform, and cause the performance of, each DIP Order and such other agreements, certificates, instruments, receipts, petitions, motions, or other papers or documents relating to the transactions contemplated thereby to which each such Company is or will be a party, including, but not limited to, any security agreements, pledge agreements, guaranty agreement, assignment documents, notices, financing statements, mortgages, intellectual property filings, tax affidavits, fee letters, and other instruments as any of the DIP Agents or requisite DIP Lenders may reasonably request or as may be necessary or appropriate to create, preserve, and perfect the liens of the DIP Agents or the Prepetition Agents, purported or required pursuant to any of the transaction documents to be created in the Collateral (as defined in the DIP Credit Agreement (or similar term defined therein)), such agreements with third parties (including, without limitation, bank agency agreements, lockbox agreements, control agreements, landlord agreements, and warehouse letters) relating to the Collateral (as defined in the DIP Credit Agreement (or similar term defined therein)), any swap contracts or hedging agreements and such other loan documents, guarantees, instruments, certificates, and documents as may be reasonably requested by any of the DIP Agents and the requisite DIP Lenders, or required by the DIP Orders, DIP Credit Agreement, or any of the foregoing (collectively with the DIP Orders, the "DIP Documents"), with such changes, additions, and modifications thereto as any Authorized Signatory executing the same shall approve, such approval to be conclusively evidenced by such Authorized Signatory's execution and delivery thereof;

FURTHER RESOLVED, that the incurrence of the liabilities and obligations arising from each DIP Order and each DIP Document by the Companies party thereto, (i) is necessary and convenient to the conduct, promotion, and attainment of the business of such Companies, and (ii) may reasonably be expected to benefit such Companies, directly or indirectly;

FURTHER RESOLVED, that each Company, as debtor and debtors-in-possession under the Bankruptcy Code be, and hereby is, authorized to incur the DIP Obligations, including the borrowing of the loans under the DIP Credit Agreement and other obligations related to the DIP

5

Financing, and to undertake any and all related transactions on substantially the same terms as contemplated under the DIP Documents, including granting liens on and security interests in its assets, including the Collateral (as defined in the DIP Credit Agreement (or similar term defined therein)), to the DIP Agents or the Prepetition Agents to secure such obligations (collectively, the "DIP Transactions");

FURTHER RESOLVED, that each of the Authorized Signatories of each Company, acting alone or with one or more other Authorized Signatories, be, and hereby is, authorized, directed, and empowered in the name of, and on behalf of, each such Company, as debtors and debtors-in-possession, to take such actions as in their discretion is determined to be necessary, desirable, or appropriate to execute the DIP Transactions, including the negotiation, execution, and delivery of: (a) the DIP Documents; (b) such other instruments, certificates, notices, assignments, and other documents, including, without limitation, any amendments to any DIP Documents, as may be reasonably requested by the DIP Agents; and (c) such forms of deposit account control agreements, officer's certificates, and compliance certificates as may be required by the DIP Documents, in the name of and on behalf of each Company, with such changes therein as shall be approved by the Authorized Signatories executing the same, with such execution by said Authorized Signatory to constitute conclusive evidence of his or her approval of the terms thereof, including any departures therein from any form presented to the Governing Bodies of such Companies;

FURTHER RESOLVED, that each of the Authorized Signatories of each Company, acting alone or with one or more other Authorized Signatories, be, and hereby is, authorized, directed, and empowered in the name of, and on behalf of, each such Company, as debtors and debtors-in-possession, to guarantee the DIP Obligations under the DIP Documents and to assign, transfer, pledge, and grant to each DIP Agent or the Prepetition Agents, for the ratable benefit of the respective or applicable Secured Parties (as defined in the DIP Credit Agreement (or similar term defined therein)), a security interest in all or substantially all the assets of such Company, as collateral security for the prompt and complete payment and performance when due of the DIP Obligations under the DIP Credit Agreements, the DIP Orders, and the other DIP Documents to which such Company is a party or which it is subject to, and to take or cause to be taken any such actions as may be necessary, appropriate, or desirable to cause the Companies to create, perfect, and maintain a security interest in such Companies' property or assets constituting Collateral (as defined in the DIP Credit Agreement (or similar term defined therein)) as described or contemplated in the DIP Documents;

FURTHER RESOLVED, that each of the Authorized Signatories be, and hereby is, authorized and empowered to take all actions or to not take any action in the name of each Company with respect to the transactions contemplated by these resolutions, whether existing now or in the future, in each case, as such Authorized Signatory shall deem necessary or desirable in such Authorized Signatory's reasonable business judgment, including without limitation, the authorization of resolutions and agreements necessary to authorize the execution, delivery, and performance pursuant to the DIP Documents (including, without limitation, certificates, affidavits, financing statements, notices, reaffirmations, and amendments and restatements thereof or relating thereto) as may be necessary, appropriate, or convenient to effectuate the purposes of the transactions contemplated therein;

6

FURTHER RESOLVED, that each of the Authorized Signatories of each Company be, and hereby is, authorized, directed, and empowered in the name of, and on behalf of, each Company to file, or to authorize the DIP Agents to file, any Uniform Commercial Code (the "UCC") financing statements, any other equivalent filings, any intellectual property filings and recordation, and any necessary assignments for security or other documents in the name each Company that the DIP Agents or the Prepetition Agents deem necessary or appropriate to perfect any lien or security interest granted under the DIP Orders and the DIP Documents, including any such UCC financing statement containing a generic description of collateral, such as "all assets," "all property now or hereafter acquired," and other similar descriptions of like import, and to execute and deliver, and to record, or authorize the recording of, such mortgages and deeds of trust in respect of real property of each Company and such other filings in respect of intellectual and other property of each such Company, in each case as the DIP Agents or the Prepetition Agents may reasonably request to perfect the security interests of the DIP Agents or the Prepetition Agents under the DIP Orders or any of the other DIP Documents;

FURTHER RESOLVED, that each of the Authorized Signatories of each Company be, and hereby is, authorized, directed, and empowered in the name of, and on behalf of, each Company to take all such further actions, including, without limitation, to pay all fees and expenses payable in accordance with the terms of the DIP Documents, to arrange for and enter into supplemental agreements, amendments, instruments, certificates, or documents relating to the transactions contemplated by any of the DIP Documents and to execute and deliver all such supplemental agreements, amendments, instruments, certificates, or documents in the name and on behalf of each of the Companies, which shall in their sole judgment be necessary, proper, or advisable in order to perform such Companies' obligations under, or in connection with, any of the DIP Documents and the transactions contemplated therein (execution by such Authorized Signatory to constitute conclusive evidence of such judgment), and to carry out fully the intent of the foregoing resolution. The performance of any such further act or thing and the execution of any such document or instrument by any of the Authorized Signatories of the Companies pursuant to these resolutions shall be conclusive evidence that the same have been authorized and approved by the Companies in every respect; and

FURTHER RESOLVED, that each of the Authorized Signatories be, and hereby is, authorized to execute and deliver to the DIP Agents or the Prepetition Agents, as applicable, and to perform the applicable Company's obligations under, all other documents, certificates, instruments, agreements, and writings including any interest rate swaps, caps, collars, or similar hedging agreement and any financing statements (or amendments thereto) that may be contemplated by, or required in connection with, the DIP Documents, these resolutions, and the transactions described herein and therein, and to do all such acts and things as any person hereinafter authorized to execute such documents on behalf of such Company determines to be necessary or advisable in connection with, or as contemplated by, or for the purpose of giving effect to, or carrying out the provisions of, the DIP Documents, such determination to be conclusively evidenced by such person's signature thereon or completion thereof, as applicable.

**Stalking Horse Asset Purchase Agreement**

BE IT RESOLVED, that in connection with the Chapter 11 Cases, the Governing Bodies of Supply Source Enterprises, Inc., Impact Products, LLC, and The Safety Zone, LLC (each an "APA Signatory" and, together, the "APA Signatories") have determined that it is in the best interests of the Company and its stakeholders that the APA Signatories enter into, and the Companies and their stakeholders will obtain benefits from, the transactions contemplated by that certain Asset Purchase Agreement (the "Stalking Horse APA") with TZ SSE Buyer LLC, on the terms and conditions substantially similar to those set forth in the form previously provided to the APA Signatories' Governing Bodies, and with such changes thereto as the Authorized Signatories executing the same shall approve, and any other agreements, consents, certificates, amendments, assignments, and instruments in connection therewith (together with the Stalking Horse APA, the "Sale Documents"), in each case subject to approval by the Bankruptcy Court;

FURTHER RESOLVED, that the form, terms, and provisions of each of the Sale Documents and each of the APA Signatories' performance of its obligations thereunder, are hereby, in all respects confirmed, ratified, and approved;

FURTHER RESOLVED, that any Authorized Signatory is hereby authorized, empowered, and directed, in the name and on behalf of each of the APA Signatories, to cause the APA Signatories to negotiate and approve the terms, provisions of, and performance of, and to prepare, execute and deliver the Sale Documents, in the name and on behalf of the APA Signatories, and such other documents, agreements, instruments, and certificates as such Authorized Officer executing the same considers necessary, appropriate, proper, or desirable to effectuate the transactions contemplated by the Sale Documents;

FURTHER RESOLVED, that any Authorized Signatory is hereby authorized, empowered, and directed, in the name and on behalf of each of the APA Signatories, to take all such further actions, including to pay all fees and expenses, in accordance with the terms of the Sale Documents, which shall, in such Authorized Signatory's sole judgment, be necessary, proper, or advisable to perform the APA Signatory's obligations under or in connection with the Sale Documents and the transactions contemplated therein and to carry out fully the intent of the foregoing resolutions; and be it

FURTHER RESOLVED, that any Authorized Signatory is hereby authorized, empowered, and directed, in the name and on behalf of each of the APA Signatories, to execute and deliver any amendments, supplements, modifications, renewals, replacements, consolidations, substitutions, and extensions of the Sale Documents which shall, in such Authorized Officer's sole judgment, be necessary, proper, or advisable.

**General Resolutions**

NOW, THEREFORE, BE IT RESOLVED, that the Authorized Signatories of each of the Companies be, and each of them hereby is, authorized, empowered, and directed to execute, acknowledge, verify, deliver, and file any and all such other agreements, documents, instruments,

8

and/or certificates and to take such other actions as may be necessary, proper, or appropriate in order to carry out the intent and purposes of any of the foregoing resolutions;

FURTHER RESOLVED, that each Governing Body of each Company has received sufficient notices of the actions and transactions relating to the matters contemplated by any of the foregoing resolutions, as may be required by the organizational documents of each Company, or hereby waive any right to have received such notices;

FURTHER RESOLVED, that each of the members of the board of managers, board of directors, restructuring committees, the sole member, the manager or the managing member, as applicable, hereby irrevocably waives notice of the time, place, and purposes of a Meeting and any adjournments thereof, to the extent such notice is required by the applicable organizational documents of each Company;

FURTHER RESOLVED, that any and all actions heretofore or hereafter taken and expenses incurred in the name of and on behalf of any Company by any officer, director, or other Authorized Signatory of any Company in connection with or related to the matters set forth or contemplated by any of the foregoing resolutions be, and they hereby are, approved, ratified, and confirmed in all respects as fully as if such actions had been presented to the Governing Bodies for approval prior to such actions being taken; and

FURTHER RESOLVED, that any Authorized Signatory of any of the Companies is hereby authorized to certify to third parties with respect to adoption of any of the foregoing resolutions in the form and substance satisfactory to them.

*[Remainder of page intentionally left blank]*

9

DocuSign Envelope ID: E4F3B7A4-AEFE-4048-9B7G-9D0B64966307

The undersigned agree that this Omnibus Action by Written Consent in Lieu of a Meeting of the Governing Bodies shall be added to the corporate records of each Company and made a part thereof, and the undersigned further agree that the resolutions set forth hereinabove shall have the same force and effect as if adopted at a meeting duly noticed, held, called, and constituted pursuant to each Company's organizational documents and the applicable laws of the jurisdiction in which such Company is organized. Facsimile, scanned, or electronic signatures shall be acceptable as originals.

*[Signature pages follow]*

**IN WITNESS WHEREOF**, the undersigned has executed this Omnibus Action by Written Consent as of the date first written above.

**BOARD OF DIRECTORS OF SUPPLY SOURCE ENTERPRISES, INC.:**

DocuSigned by:

*Laura Marcero*

E1758C2A54F74FB...

Laura Marcero

**BOARD OF DIRECTORS OF:**
**SSE BUYER, INC.**
**SSE INTERMEDIATE, INC.**

DocuSigned by:

AD8D198C00924ED...

Rahul Vinnakota

DocuSigned by:

*Vivek Jain*

167559C8C9EDF442...

Vivek Jain

DocuSigned by:

*Steven Kozhimala*

9A3C91ECE2B046D...

Steven Kozhimala

**SOLE MEMBER OF IMPACT PRODUCTS, LLC:**

SUPPLY SOURCE ENTERPRISES, INC.

DocuSigned by:

*Laura Marcero*

E1758C2A54F74FB...

By: Laura Marcero
Its: Vice President

*[Signature Page to Omnibus Action by Written Consent]*

**SOLE MEMBER OF THE SAFETY ZONE, LLC:**

SUPPLY SOURCE ENTERPRISES, INC.

DocuSigned by:

*Laura Marcero*

E1758C2A54F74FB...

By: Laura Marcero

Its: Vice President

**Fill in this information to identify the case:**

Debtor name: Supply Source Enterprises, Inc., *et al.*,

United States Bankruptcy Court for the District of Delaware

Case number (If known):

☐ Check if this is an amended filing

## Official Form 204

### Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders

**12/15**

A list of creditors holding the 30 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 30 largest unsecured claims.

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 | SHIJIAZHUANG HONGRAY GROUP NO 135 XINHUA WEST ROAD JINZHOU, FC CHINA | PHONE: 86-311-3613127 FAX: 86-311-3634221 EMAIL: DANDAN@HONGRAY.COM.CN; LIFENGLEI@HONGRAY.COM.CN | TRADE | | | | $    5,843,992.06 |
| 2 | ZHONGHONG PULIN MEDICAL PRODUCTS CO LTD WEST INDUSTRIAL ZONE LUANNAN TANGSHAN TANGSHAN, FC 63500 CHINA | PHONE: 86-315-4169201 FAX: 86-315-4169201 EMAIL: DANNY@ZHONGHONGPULIN.CN; HAJIA.LIU@ZHONGHONGPULIN.CN | TRADE | | | | $    2,986,423.80 |
| 3 | SHANDONG SHANGWEI MEDICAL PRODUCTS CO., LTD SONGHUAJIANG RD, CAOXIAN SHANDONG PROVINCE, P.R. CHINA HEZE, FC 274400 CHINA | PHONE: 530-2069711 FAX: 530-2069778 EMAIL: KAYLA@SDSWMED.COM; ALINA@SDSWMED.COM | TRADE | | | | $    1,936,011.20 |
| 4 | VIRTUAL TRANSPORTATION MGMNT 2027 OTIS DR. APT D ALAMEDA, CA 94501-5656 | EMAIL: ALLISONKIDD-PROBST@VTM.COM; KAMALESHV@VTM.COM; NANCYB@VTM.COM; LOGUS@VTM.COM; DARCARTER@VTM.COM; SCOTTSHEARON@VTM.COM; CARRIERSUPPORT@VTM.COM | TRADE | | | | $    1,484,226.02 |
| 5 | LAUFER GROUP INTERNATIONAL, LT PO BOX 780977 1663 PHILADELPHIA, PA 19178-0977 | PHONE: 212-945-6000 EMAIL: PAYMENTS@LAUFER.COM | TRADE | | | | $    1,418,741.31 |
| 6 | B&B MOLDED PRODUCTS INC 1250 OTTAWA AVE DEFIANCE, OH 43512 | PHONE: 419-592-8700 FAX: 419-592-0209 EMAIL: KBARE@BBMOLDED.COM; DSCHWIEBERT@BBMOLDED.COM; KBARE@BBMOLDED.COM; KBOSMA@BBMOLDED.COM; AGRAY@BBMOLDED.COM; JHARTFORD@BBMOLDED.COM | TRADE | | | | $    1,371,734.18 |
| 7 | PT UNIVERSAL GLOVES JALAN PERTAHANAN NO 17 PATUMBAK DELI SERDANG SUMATRA, FC 20361 INDONESIA | PHONE: (62) 61-7883055 FAX: 62-617-883411 EMAIL: ELVINA@UNI-LATEX.COM; TRIXIE@UNI-LATEX.COM | TRADE | | | | $    1,281,436.50 |

| Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
| --- | --- | --- | --- | --- | --- | --- |
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 8  LIAONING SHANGWEI MEDICAL PROD CHENGIVAN DEV. ZONE DIAOBINGSHAN TIELING, FC 112700 CHINA | EMAIL: KAYLA@SDSWMED.COM; ALINA@SDSWMED.COM | TRADE | | | | $  996,749.75 |
| 9  JIANGSU BYTECH MEDICAL SUPPLIES CO., LTD. NO. 88 JUNSHI ROAD,PETROLEUM EQUIPMENT INDUSTRIAL PARK YANCHENG, FC 224700 CHINA | EMAIL: ANNA@BYTECH-DT.COM; ANDY@BYTECH-DT.COM | TRADE | | | | $  699,659.00 |
| 10  PALMER LOGISTICS HOU1028 PO BOX 650998 2117 DALLAS, TX 75265-0998 | EMAIL: AR@PALMERFIXTURE.COM | TRADE | | | | $  651,452.49 |
| 11  HEBEI ASTRO MEDICAL SUPPLY CO JINZHOU ECONOMIC DEVELOPMENT HEBEI PROVINCE, CHINA JINZHOU, FC 52260 CHINA | PHONE: 31185125618 FAX: 3-118-512-5626 EMAIL: SALES@WALLYPLASTIC.COM | TRADE | | | | $  632,085.20 |
| 12  XIANTAO CROSSCARE PRODUCTS 168#XINMING RD GAOJIADU VILLAGE XIANTAO, FC 433000 CHINA | PHONE: 155-72886866 EMAIL: CROSSCARE_CHONY@163.COM | TRADE | | | | $  612,339.18 |
| 13  ANHUI BYTECH MEDICAL SUPPLIES THE NORTH NEW ECONOMIC DEVELOPMENT AREA SUZHOU, FC 234200 CHINA | PHONE: 86-510-85093588 FAX: 86-510-85731588 EMAIL: ANNA@BYTECH-DT.COM; ANDY@BYTECH-DT.COM | TRADE | | | | $  599,957.50 |
| 14  XIANTAO DEMING HEALTHCARE PRODUCTS CO LTD NO. 198 PENGCHEANG AVE PENGCHANG TOWN XIANTAO, FC 433000 CHINA | PHONE: 728-261-4666 FAX: 728-261-2364 EMAIL: DEMING817@VIP.SINA.COM | TRADE | | | | $  557,256.05 |
| 15  FUJIAN CASHION GARMENT CO., LT T 06,25 / F., BLOCK A, WORLDWI NO. 158 WUSI ROAD 4057 FUZHOU, FC CHINA | EMAIL: JACKIE@CASHION-CN.COM | TRADE | | | | $  535,622.10 |
| 16  GUANGDONG KINGFA SCI AND TECH NO. 28 DELONG ROAD QINGCHEN DIST QINGYUAN, FC 510663 CHINA | PHONE: 891-3223 EMAIL: GUOCHU@KINGFA.COM.CN | TRADE | | | | $  515,222.25 |
| 17  DIPPED PRODUCTS LIMITED 400 DEANS ROAD COLUMBIO 10 SRI LANKA, SRI LANKA | EMAIL: THAKSHILA.W@DPLGROUP.COM | TRADE | | | | $  477,834.86 |

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 18 | FENGCHENG ZHONGHE PAPER PROD NO. 109-1 XIJIANTING STREET FENGCHENG, FC 118100 CHINA | PHONE: 86-415-8124899 FAX: 86-415-8124899 EMAIL: ZHONGHEPAPER@126.COM | TRADE | | | | $    465,471.80 |
| 19 | SHAMROCK MOLDED PRODUCTS 1440 HOLLOWAY UNIT 2 HOLLAND, OH 43528-8608 | PHONE: 419-865-2548 FAX: 419-865-3326 EMAIL: HALEY@DOYLESHAMROCK.COM; JESSICA@DOYLESHAMROCK.COM | TRADE | | | | $    413,442.90 |
| 20 | HENG YUAN PLASTIC PRODUCTS LTD 3224 GUODAO MAAN TOWN HUICHENG DISTRICT HUIZHOU, FC 516001 CHINA | PHONE: 380-966-9710 FAX: 86-852-3616883 EMAIL: LIUXUE2012@126.COM | TRADE | | | | $    407,393.85 |
| 21 | RAYEN HEALTHCARE PRODUCTS LTD BENCHENG TOWN LUANNAN COUNTY TANGSHAN, FC 63500 CHINA | PHONE: 86-315-4169377 FAX: 86-315-4169376 EMAIL: RAYENHEALTHCARE@126.COM | TRADE | | | | $    403,801.70 |
| 22 | SHANDONG HENGSHEN HAIRUN MEDIC NO. 39, WEIQIAO ALUMINUM DEEP PROCESSING INDUSTRIAL PARK PROCESSING INDUSTRIAL PARK ZOUPING, FC 256206 CHINA | EMAIL: ALICE@HSHR1118.COM | TRADE | | | | $    397,191.00 |
| 23 | HUBEI QIFU PROTECTIVE PRODUCTS ZHIBUWAN VILLAGE, PENGCHANG AV XIANTAO CITY 1332 XIANTAO, FC 433000 CHINA | EMAIL: HBYHB@VIP.163.COM | TRADE | | | | $    394,327.52 |
| 24 | HITEN NONWOVEN HEALTHCARE PROD NO. 29 PENGCHANG AVE XIANTAO CITY 4106 XIANTAO, FC CHINA | EMAIL: XTHAITENGWANG@163.COM; STEVEN@HITEN.COM.CN | TRADE | | | | $    378,271.60 |
| 25 | XIANTAO YILIN PROTECTIVE PROD NO. 19 JIANSHE ROAD PENGCHANG AVE XIANTAO, FC 43300 CHINA | EMAIL: KOBE-CARE@VIP.163.COM | TRADE | | | | $    372,012.63 |
| 26 | CAPSTONE LOGISTICS 3086 MOMENTUM PLACE CHICAGO, IL 60689 | EMAIL: JUANITA.CARD@CAPSTONELOGISTICS.COM; JUANITA.CARD@CAPSTONELOGISTICS.COM; RACHEL.TAYLOR@CAPSTONELOGISTICS.COM; STEPHANIE.RITZ@CAPSTONELOGISTICS.COM; JULIANA.SALCEDO@CAPSTONELOGISTICS.COM; RACHEL.TAYLOR@CAPSTONELOGISTICS.COM; TYSON.REHMER@CAPSTONELOGISTICS.COM | TRADE | | | | $    338,200.55 |
| 27 | PA TIN DA GROUP CO LTD B306-406 CLOUD CITY NO. 1933 HUAGUAN RD TIANHE DISTRICT GUANGZHOU, FC 510663 CHINA | PHONE: 86 203 881 8784 FAX: 86 023 886 7281 EMAIL: SHIRLEY@MICROFIBERCHINA.COM; OLIVIA@MICROFIBERCHINA.COM | TRADE | | | | $    329,088.19 |

| Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 28    TAICANG UNION CLEAN CO., LTD NO 80 SHALU RD, HUNGJING TOWN TAICANG, FC 215427 CHINA | PHONE: 18121551688 EMAIL: SALES2@UCMICROFIBER.COM | TRADE | | | | $        326,199.11 |
| 29    AVISION SALES GROUP I&I SALES GROUP PO BOX 947929 LOCKBOX NUMBER 865929 ATLANTA, GA 30394-7929 | PHONE: 610-971-9005 FAX: 610-971-9005 EMAIL: TONY_LASITA@AVISION.COM | TRADE | | | | $        300,000.00 |
| 30    ZHANGJIAGANG JIAWEN PLASTIC PRODUCTS FACTORY NO197 SHUANGLONG RD FENGHUANG TOWN ZHONGJIANCHANG, FC CHINA | PHONE: 39001567966 EMAIL: FANNYJIAWEN@163.COM; 3287624837@QQ.COM | TRADE | | | | $        283,469.20 |

**Fill in this information to identify the case and this filing:**

Debtor Name  Impact Products, LLC

United States Bankruptcy Court for the: _____  District of  Delaware
(State)

Case number (*If known*): _____

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors

12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

## Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐ *Schedule A/B: Assets-Real and Personal Property* (Official Form 206A/B)

☐ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)

☐ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

☐ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)

☐ *Schedule H: Codebtors* (Official Form 206H)

☐ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)

☐ Amended *Schedule*

X *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)

X Other document that requires a declaration **Combined Corporate Ownership Statement and Certification of Debtors' Creditor Matrix**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on:  05/21/2024           ✗  */s/ Laura Marcero*
MM / DD / YYYY                         Signature of individual signing on behalf of debtor

                                        Laura Marcero
                                        Printed name

                                        Vice President
                                        Position or relationship to debtor

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Supply Source Enterprises, Inc*., et al.*,[1] | Case No. 24- [_____] (___) |
| Debtors. | (Joint Administration Requested) |

## CERTIFICATION OF DEBTORS' CREDITOR MATRIX

In accordance with rule 1007(a) of the Federal Rules of Bankruptcy Procedure and rule 1007-2(a) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), a list of creditors (the "Creditor Matrix") of the above-captioned debtors and debtors in possession (the "Debtors") is filed by attachment hereto.

The Creditor Matrix has been prepared from the Debtors' books and records. The undersigned, Thomas Studebaker, Chief Restructuring Officer of the Debtors, hereby certifies that the Creditor Matrix contains the names and addresses of all creditors of the Debtors that could be ascertained after diligent inquiry, based on a review of the Debtors' books and records and is consistent with the information contained therein. To the extent practicable, the Creditor Matrix complies with Local Rule 1007-1(a). The Debtors reserve the right to amend or supplement the Creditor Matrix as necessary.

---

[1] The Debtors in these chapter 11 proceedings, together with the last four digits of each Debtor's federal tax identification number, are: Supply Source Enterprises, Inc. (0842); SSE Parent GP, LLC (9632); SSE Parent, LP (2770); SSE Acquisition Holdings, Inc. (2234); SSE Intermediate, Inc. (1772); SSE Buyer, Inc. (5901); Impact Products, LLC (7450); and The Safety Zone, LLC (4597). The Debtors' headquarters are located at 385 Long Hill Road, Guilford, Connecticut 06437.

Although the information contained in the Creditor Matrix is based on a review of the Debtors' books and records, the Debtors have not completed a comprehensive legal and/or factual investigation with regard to possible defenses of the Debtors and their estates to any claims of the potential claimants included in the Creditor Matrix. In addition, certain of the parties included in the Creditor Matrix may not hold outstanding claims as of the date hereof, and therefore may not be creditors of the Debtors and their estates for purposes of these chapter 11 cases. Therefore, the Creditor Matrix does not and should not be deemed or otherwise construed to constitute either (i) a waiver of any defense of the Debtors and their estates to any claim that may be asserted against the Debtors or their estates or (ii) an acknowledgement or admission of the validity, priority, or amount of any claim that may be asserted against the Debtors or their estates.

Dated: May 21, 2024

*/s/ Thomas Studebaker*

Thomas Studebaker
Chief Restructuring Officer